IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CORTEZ T. HARMON,                  :
                                   :
           Petitioner,             :
                                   :
    v.                             :     Civil Action No. 15-166-RGA
                                   :
G.R. JOHNSON, Warden, and          :
ATTORNEY GENERAL OF THE            :
STATE OF DELAWARE,                 :
                                   :
           Respondents.            :

## MEMORANDUM OPINION

Cortez T. Harmon. *Pro se* Petitioner.

Gregory E. Smith, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

January 14, 2016
Wilmington, Delaware

*Richard G. Andrews*
ANDREWS, UNITED STATES DISTRICT JUDGE:

Pending before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Cortez T. Harmon ("Petitioner"). (D.I. 1) The State filed an Answer in opposition. (D.I. 9) For the reasons discussed, the Court will deny the Petition as barred by the limitations period prescribed in 28 U.S.C. § 2244.

I. **FACTUAL BACKGROUND**

In May 2012, a confidential informant told law enforcement officers that Petitioner would be traveling to Philadelphia by car to make a large cocaine purchase. (D.I. 11, *In re Harmon*, ID# 1205019743, Letter Order, at 3 (Del. Super. Ct. Apr. 25, 2013)) The police agencies spotted Petitioner's vehicle returning from Philadelphia, and they followed the vehicle until it stopped in Selbyville, Delaware. *Id.* After detaining and seizing Petitioner and his passenger, the police found 509 grams of cocaine in a sub-woofer box located on the passenger's lap. (D.I. 11, *State v. Harmon*, Adult Complaint and Warrant, Case No. 1205019743, at Exh. B) Petitioner made a post-*Miranda* statement acknowledging he knew a drug deal was occurring and that the sub-woofer belonged to him. (D.I. 11, *In re Harmon*, ID# 1205019743, Letter Order, at 3 (Del. Super. Ct. Apr. 25, 2013))

II. **PROCEDURAL BACKGROUND**

The Delaware State Police arrested Petitioner on May 24, 2012. (D.I. 9 at 2) On July 12, 2012, he waived indictment, and the State filed an information charging him with: possession of cocaine; drug dealing; second degree conspiracy; and possession of drug paraphernalia.[1] *Id.* On August 21, 2012, Petitioner pled guilty to drug dealing and conspiracy, in exchange for which the State dismissed the balance of the charges. *Id.* The Superior Court immediately sentenced

---

[1] It appears that he was also facing eighteen (18) years of back time for a violation of probation. (D.I. 9 at 12 (quoting the Superior Court)).

Petitioner to a total of twenty-seven years at Level V incarceration, suspended after fourteen years and successful completion of a drug treatment program for decreasing levels of supervision.[2] *Id.*

On August 29, 2012, Petitioner moved for a modification of sentence. (D.I. 11, Del. Super. Ct. Crim. Dkt. Entry No. 11) The Superior Court denied that motion on September 12, 2012. (D.I. 11, Del. Super. Ct. Crim. Dkt. Entry No. 12) Petitioner did not appeal that decision.

On February 19, 2013, Petitioner, while represented by counsel, filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 11, Del. Super. Ct. Crim. Dkt. Entry No. 13) The Delaware Superior Court denied the Rule 61 motion on April 25, 2013. *Id.* at Entry No. 20. Petitioner did not appeal that decision.

On April 21, 2014, Petitioner, this time proceeding *pro se*, filed a second Rule 61 motion. (D.I. 11, Del. Super. Ct. Crim. Dkt. Entry No. 25) He filed a third Rule 61 motion on August 6, 2014. *Id.* at 27. The Superior Court denied both motions on November 12, 2014. (D.I. 1 at 22-23) Petitioner appealed, and the Delaware Supreme Court dismissed Petitioner's appeal for being untimely filed. *See Harmon v. State*, 106 A.3d 1049 (Table), 2015 WL 115490 (Del. Jan. 7, 2015).

The instant Petition was received and docketed on February 18, 2015. (D.I. 1) Although it lists nine grounds for relief, those grounds are more appropriately summarized into three claims: (1) the police illegally stopped Petitioner and illegally searched his car (original grounds

---

[2]More specifically, Petitioner was sentenced as follows: (1) drug dealing – twenty-five years at Level V (with credit for eighty-nine days previously served), suspended after fourteen years and successful completion of either Key or Greentree for six months at Level IV work release, followed by eighteen months at Level III probation; and (2) two years at Level V, suspended for one year at Level III. (D.I. 9 at 2 n. 3)

2

one and five); (2) ineffective assistance of counsel (original ground two); and (3) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose the evidence tampering scandal at the Office of the Chief Medical Examiner ("OCME") (original grounds three, four, six, seven, eight, and nine). In response, the State asserts that the Court should dismiss the Petition as time-barred. (D.I. 9 at 3-6) Alternatively, the State contends that the claims presented in the Petition do not warrant relief because they are either procedurally barred or barred by *Stone v. Powell*, 428 U.S. 465, 490 (1976). (D.I. 9 at 7-14)

## III.   ONE YEAR STATUTE OF LIMITATIONS

AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Timeliness must be evaluated on a claim-by-claim basis, *see Fielder v. Varner*, 379 F.3d 113, 118 (3d Cir. 2008), and AEDPA's limitations period is subject to statutory

3

and equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010)(equitable tolling); 28 U.S.C. § 2244(d)(2)(statutory tolling).

Petitioner does not assert, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B) or (C). However, Petitioner's argument in Claim Three that the State violated *Brady* by failing to disclose the existence of the OCME drug evidence scandal until long after his conviction in 2012[3] could be construed as an attempt to establish the revelation of the OCME drug evidence scandal as a "newly discovered" factual predicate triggering a later starting date of the limitations period under § 2244(d)(1)(D) for Claim Three. The Court is not persuaded. A violation of *Brady* occurs when the government fails to disclose evidence materially favorable to the accused, including both impeachment evidence and exculpatory evidence.[4] *United States v. Bagley*, 473 U.S. 667, 676 (1985). Therefore, in order to trigger a later starting date under § 2244(d)(1)(D) for his *Brady* claim, Petitioner must show that, exercising due diligence, he could not have learned that the State suppressed information that the evidence in his case may have been part of the compromised drug evidence involved in the OCME scandal until February or June of 2014.

---

[3]In February 2014, the Delaware State Police and the Department of Justice began an investigation into a drug evidence scandal in the OCME. *See Brown v. State*, 108 A.3d 1201, 1204 (Del. 2015). In June 2014, they issued a preliminary report regarding the "systemic operational failings of the [Controlled Substances Unit of the DME's Office]" revealing "51 pieces of potentially compromised evidence at the CSU, stemming from 46 cases between 2010 and 2013." *Biden: Investigation of State Medical Examiner's Drug Lab Reveals Systemic Failings, Urgent Need for Reform*, Dep't of Justice, Att'y Gen.'s Website (June 19, 2014), http://news.delaware.gov/.

[4]More specifically, a petitioner establishes a *Brady* violation by showing that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value: (2) the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004) (citing *Banks v. Dretke*, 540 U.S. 668 (2004)).

Petitioner cannot meet this burden for two reasons. First, in his Petition, Petitioner concedes that the "evidence seized was not tested [] in either [Delaware or Maryland]." (D.I. 1 at 9) Indeed, the record only definitively reveals that the drugs were field tested; nothing in the record indicates that the drugs were sent to the OCME for further testing. (D.I. 11, *State v. Harmon*, Case No. 1205019743, Notice of [Rule 61] Motion dated Feb. 6, 2013, at Exh B) In all likelihood, the drugs were sent to OCME for testing, but from the absence of any statement of test results, the relatively short time between Petitioner's arrest and guilty pleas, it seems likely that no testing was performed before Petitioner's entry of his guilty pleas. And, Petitioner states there was no testing. Thus, not surprisingly, there is no allegation that test results played any factor in Petitioner's decision to plead guilty. If the drug evidence in Petitioner's case was never tested by the OCME, then the revelation of the OCME scandal in 2014 cannot constitute the new factual predicate for Claim Three as defined by § 2244(d)(1)(D). *See McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007)("The 'factual predicate' of a petitioner's claims [under § 2244(d)(1)(D)] constitutes the 'vital facts' underlying those claims.").

Second, even if the drug evidence in this case was tested by the OCME, nothing in the record suggests that the State was aware of the OCME scandal when Petitioner entered his guilty plea in August 2012; in fact, the Delaware State Police and the Department of Justice did not start investigating the handling of evidence at the OCME until February 2014. *See Brown*, 108 A.3d at 1204. Since the State was not aware of the possibility that any drug evidence had been mishandled by the OCME until 2014, the State could not have concealed any potentially exculpatory or material impeachment evidence concerning any alleged mishandling of the drug evidence in Petitioner's case by the OCME during Petitioner's case in 2012. In other words, the

5

factual predicate underlying Petitioner's *Brady* claim does not exist. Accordingly, the Court concludes that the one-year period of limitations began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the statute of limitations begins to run, on the date on which the time for seeking direct review in state court expires. *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). In this case, Petitioner was sentenced on August 21, 2012, and he did not file a direct appeal. As a result, his judgment of conviction became final on September 20, 2012, thirty days after he was sentenced. Applying the one-year limitations period to that date, Petitioner had until September 20, 2013 to timely file a habeas petition. *See Wilson v. Beard*, 426 F.3d 653, 662-64 (3d Cir. 2005)(Fed. R. Civ. P. 6(a) applies to AEDPA's limitations period); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015)(AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date it began to run). Petitioner, however, did not file the instant Petition until February 18, 2015,[5] approximately one and one-half years after that deadline. Thus, the Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled. *See Jones,* 195 F.3d at 158. The Court will discuss each doctrine in turn.

**A. Statutory Tolling**

---

[5]Petitioner did not date the Petition, and the postmark on the envelope in which he mailed the Petition does not indicate a date. Therefore, the Court adopts February 18, 2015 as the date of filing, since that is date the Clerk of the Court received and docketed the Petition. If the postmark indicated a date a few days earlier, it would have no material impact on the analysis.

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). However, the limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

On August 29, 2012, before his judgment of conviction became final, Petitioner filed a motion for modification of sentence. The Superior Court denied the motion on September 12, 2012, and Petitioner did not appeal that decision. Assuming, without deciding, that the sentence modification motion constitutes the type of state post-conviction motion contemplated by § 2244(d)(2), the sentence modification motion tolled the limitations period from August 29, 2012 through October 15, 2012.[6] Thus, the statutory tolling triggered by the sentence modification motion essentially delayed the limitations period from starting to run until October 16, 2012.

The limitations clock thus ran for 115 days without interruption until Petitioner filed his first Rule 61 motion on February 9, 2013. The Delaware Superior Court denied the Rule 61 motion on April 25, 2013, and Petitioner did not appeal that decision. Thus, Petitioner's first

---

[6]The thirty-day period to appeal the Superior Court's denial of the motion for sentence modification actually expired on October 13, 2012, which was a Saturday. Therefore, the period extended through Monday, October 15, 2012. *See* Del. Sup. Ct. R. 6(a) (setting forth a thirty day appeal period); Del. Sup. Ct. R. 11(a) (setting forth a method for computing time).

Rule 61 motion tolled the limitations period through May 28, 2013, which includes the thirty-day period Petitioner had to appeal the Superior Court's decision.[7]

The limitations clock started to run on May 29, 2013, and ran the remaining 250 days without interruption until AEDPA's limitations period expired on February 3, 2014. Petitioner's second and third Rule 61 motions have no statutory tolling effect because they were filed after the expiration of AEDPA's limitations period. Hence, even with the applicable statutory tolling, the Petition is time-barred, unless equitable tolling applies.

### B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50. With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.* As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 400 (3d Cir. 2011). Notably, an extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d. Cir. 2013).

---

[7]The thirty-day period to appeal Petitioner's first Rule 61 motion actually expired on May 25, 2013, which was a Saturday. Since Monday, May 27, 2013 was Memorial Day, the thirty day appeal period extended through the next non-holiday business day: Tuesday, May 28, 2013. *See* Del. Sup. Ct. R. 6(a) (setting forth a thirty day appeal period); Del. Sup. Ct. R. 11(a) (setting forth a method for computing time).

Petitioner does not explicitly assert that extraordinary circumstances prevented him from timely filing the instant Petition. To the extent Petitioner's OCME drug evidence scandal/*Brady* violation argument should be construed as an attempt to trigger equitable tolling at least through February 2014, the month in which the State initiated its investigation into the OCME drug scandal, the attempt is unavailing. As previously discussed, there is no indication that the drug evidence in this case was tested by the OCME, and even it had been, there is no indication that the State knew about the general mishandling of drug evidence in the OCME that occurred in some cases while Petitioner's case was pending in 2012. In turn, although Petitioner raised the issue of the OCME drug evidence scandal in his third Rule 61 motion that he filed on August 4, 2014, he provides no explanation as to why he waited until February 18, 2015 to file the instant Petition. Given these circumstances, Petitioner cannot demonstrate that the OCME scandal, and/or the State's failure to inform him about the OCME scandal, actually prevented him from timely filing a petition seeking federal habeas relief.

Finally, to the extent Petitioner's late filing was the result of his own miscalculation of the one-year filing period, such mistakes do not warrant equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004).

For all of these reasons, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented. Accordingly, the Court will dismiss the instant Petition as time-barred.[8]

## IV.   CERTIFICATE OF APPEALABILITY

---

[8]The Court's conclusion that it must dismiss the Petition as time-barred obviates the need for the Court to address the State's alternative reasons for denying the Petition.

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that the instant Petition is time-barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied as time-barred. An appropriate Order will be entered.